# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEVEN WILKINSON, | : | CIVIL NO. 3:10-CV- 1435 |
| | : | |
| Petitioner, | : | |
| v. | : | |
| | : | **(Magistrate Judge Carlson)** |
| KENNETH CAMERON, AND | : | |
| ATTORNEY GENERAL , | : | |
| COMMONWEALTH OF | : | |
| PENNSYLVANIA, | : | |
| | : | |
| Respondents. | : | |

## MEMORANDUM OPINION

### I. Introduction

This case is one of two substantively identical habeas corpus petitions filed by the petitioner, a state inmate, challenging his current sentence and imprisonment. The petition filed by Wilkinson in this case, and in a companion case, Wilkinson v. Pennsylvania Board of Probation and Parole, No. 3:10-CV-1436, arise out of the same nucleus of operative facts, and entail the same legal issues and arguments. Thus, each case presents the immutable fact that the petitioner, Steven Wilkinson, is a state parolee, and a criminal recidivist who violated his state parole on a rape charge by committing a gun-point sexual assault while on parole supervision. In each case, Wilkinson, who is proceeding *pro se*, has filed a petition for writ of habeas corpus

1

which contends that the decision to extend his parole release date, and to refuse to credit him for the time served on his new criminal offenses, violates his constitutional rights. In each instance, the sentencing calculation performed by the state parole board, which Wilkinson attacks, is specifically authorized by state law, which expressly provides that parolees who violate the terms of their parole by committing new crimes while on parole may not have their parole violation sentences run concurrently with the penalties imposed upon them for those new crimes.

On September 23, 2010, we ruled in Wilkinson's companion case, <u>Wilkinson v. Pennsylvania Board of Probation and Parole</u>, Civil No. 3:10-CV-1436, that Wilkinson did not meet the procedural thresholds justifying habeas relief and that this state action did not violate Wilkinson's rights in a fashion which entitled Wilkinson to habeas relief. (Doc. 51, Ex. A.) The Commonwealth has now filed a motion to dismiss this case (Doc. 51) which argues that under collateral estoppel principles this prior ruling denying Wilkinson's companion habeas petition, which addressed substantively indistinguishable claims arising out of the same facts, now controls and compels the same result in Wilkinson's current habeas case. (<u>Id</u>.) Wilkinson, in turn, has filed an opposition to the Commonwealth's motion (Doc. 55) which invites this court to reject the application of the collateral estoppel doctrine to this case and reach different legal conclusions on the virtually identical claims now being presented by

Wilkinson. In addition, Wilkinson has filed a document, styled as a motion to vacate, (Doc. 56) which urges us to release Wilkinson on bail, recuse ourselves from this case, and permit wide-ranging discovery concerning these claims, which we have previously found to be without merit.

For the reasons set forth below, we will grant the Commonwealth's motion to dismiss (Doc. 51) and deny this petition, both on collateral estoppel grounds and on substantive grounds since Wilkinson has not exhausted his state remedies and is not entitled to use a writ of habeas corpus to compel state parole officials to deviate from the parole outcome mandated by state law, and by his own repeated misconduct. In light of this ruling, we will also deny Wilkinson's motion to vacate. (Doc. 56.)

## II.    <u>Statement of Facts and of the Case</u>

The history of criminal conduct, parole violations, arrests, and imprisonment which has marked Steven Wilkinson's life was fully set forth by the Court in its prior ruling (Doc. 51, Ex. A) and began more than 20 years ago, in 1983, when Wilkinson was convicted in the Court of Common Pleas of York County of rape and involuntary deviate sexual intercourse. (<u>Id</u>.) Wilkinson was sentenced to a term of 7 ½ - to-15 years imprisonment for his role in this violent sexual assault. (<u>Id</u>.) Consequently, the original minimum and maximum parole dates for Wilkinson on these offenses were set by the

Board at August 17, 1989, and February 17, 1997. (<u>Id</u>.) In fact, Wilkinson was paroled from this sentence on February 8,1990. (<u>Id</u>.)

Eighteen months later, on November 18, 1991, while he was serving his parole, local police in Cumberland County, Pennsylvania, arrested Wilkinson for new criminal charges involving illegal possession of firearms, receipt of stolen property, and the alleged gun-point rape of a woman. (<u>Id</u>.). Based upon this new episode of armed, violent, sexually predatory conduct, the Board lodged a warrant against Wilkinson citing him for parole violations. (<u>Id</u>.)

Wilkinson was convicted of these state offenses on June 2,1992, when he pleaded guilty to Indecent Assault, and nolo contendere to Receiving Stolen Property and Firearms offenses. (<u>Id</u>.) The Court of Common Pleas of Cumberland County, Pennsylvania sentenced Wilkinson to a total term of three-to-seven years imprisonment for the new state convictions, (<u>Id</u>.), and on June 25, 1992, Wilkinson was returned to a Pennsylvania state custody. (<u>Id.</u>) For its part, the Parole Board, lodged a warrant against Wilkinson for parole violations as a result of these new convictions on June 26, 1992, and notified Wilkinson in writing of its decision to recommit him as a convicted parole violator. (<u>Id.</u>)

Wilkinson's armed criminal recidivism also came to the attention of federal authorities who charged Wilkinson on July 16, 1993, with federal firearms offenses.

(Id.) Wilkinson pleaded guilty to these federal offenses, pursuant to the terms of a plea agreement which recommended that Wilkinson's federal sentence run concurrently with the state offenses for Wilkinson's related state crimes. On November 29, 1993, the United States District Court for the Middle District of Pennsylvania accepted Wilkinson's guilty plea and sentenced Wilkinson to serve a total of 210 months in prison for this firearms offense. (Id.) The federal court's sentencing order recommended that the federal sentence "run concurrently to both state matters." (Id.)

While it appears that the state and federal sentences arising directly out of this November 1991 crime spree were served concurrently, the state Parole Board made a determination that Wilkinson's state parole sentence should not be served concurrently with these other state and federal jail terms. The Parole Board began communicating its judgments in Wilkinson's case to the petitioner as early as April 21, 1994, when the Board mailed a decision to Wilkinson that rescinded its prior re-parole decision and October 17, 1999 maximum sentence date set forth in its November 18, 1992 decision. Instead, Wilkinson was now notified that he would be recommitted as a convicted parole violator once he was returned to federal custody. (Id.) On October 18, 1994, Wilkinson was transferred to federal authorities to begin serving his 210 month federal sentence. (Id.)

While in federal custody, Wilkinson sought to challenge this parole action seeking to exercise jurisdiction over him once he completed his federal sentence. Specifically, on August 9, 2004, Wilkinson filed a petition with Pennsylvania's Commonwealth Court alleging that the Board relinquished jurisdiction over him by transferring him to federal custody and could not lodge a detainer against him for his original sentence. (Id.) On June 13, 2005, Commonwealth Court rejected Wilkinson's petition, noting that as a convicted parole violator he was not entitled under state law to run his parole violation sentence concurrently with his federal sentence for this new criminal conduct. (Id.)

Wilkinson completed service of his federal sentence and was returned to a Pennsylvania state correctional institution on September 17, 2009.(Id.) Two weeks later, on October 1, 2009, the Board mailed a recalculation decision to Wilkinson that recalculated Wilkinson's maximum release date as December 11, 2015.(Id.) This Parole Board decision reflected that Wilkinson received 281 days of credit on his original sentence for the period he was incarcerated from October 8, 1992 to July 16, 1993, and concluded that he became available to commence service of his parole violation sentence on September 8, 2009. (Id.)

The Parole Board, however, did not calculate this parole violation sentence to run concurrently with Wilkinson's federal firearms sentence. The Parole did not follow

this course because it concluded state law did not permit it to do so. Specifically, 61 Pa. C.S. § 6138 provided that, with respect to the order of sentences for convicted parole violators:

> If a new sentence is imposed on the parolee, the service of the balance of the term originally imposed shall precede the commencement of the new term imposed in the following cases:
>
> (i) If a person is paroled from a State correctional institution and the new sentence imposed on the person is to be served in the State correctional institution.
>
> (ii) If a person is paroled from a county prison and the new sentence imposed upon him is to be served in the same county prison.
>
> (iii) In all other cases, the service of the new term for the latter crime shall precede commencement of the balance of the term originally imposed.
>
> 61 Pa. C.S. § 6138(a)(5)

Upon learning of this Parole Board action, on October 15,2009, Wilkinson filed an administrative appeal with the Board, which challenged these revocation decisions and the Board's October 2009 recalculation decision. (Id.) On February 19, 2010, the Board dismissed the appeal as untimely to the extent it sought to challenge revocation decisions made in November 18, 1992, and April 21, 1994, and affirmed the October 2009 recalculation decision. (Id.) Despite the fact that the Board's decision turned on its application of state law to Wilkinson's case, Wilkinson never filed an appeal to Commonwealth Court challenging the Board's February 19, 2010 decision.

Instead, on April 2, 2010, Wilkinson filed two petitions for writ of habeas corpus, in this case, and in a companion case, Wilkinson v. Pennsylvania Board of Probation and Parole, No. 3:10-CV-1436. These petitions named different respondents, but the gravamen of both petitions was the same. In both petitions, Wilkinson challenges the calculation of his state sentences, arguing that the refusal of parole officials to run his parole violation sentence concurrently violates his rights. Thus, at bottom, Wilkinson's petition challenged the Parole Board's application of state law in this fashion which resulted in the extension of his parole release date beyond the initial term he anticipated receiving. (Id.)

On September 23, 2010, we ruled in Wilkinson's companion case, Wilkinson v. Pennsylvania Board of Probation and Parole, Civil No. 3:10-CV-1436, and found that Wilkinson had not met the procedural thresholds justifying habeas relief and that this state action did not violate Wilkinson's rights in a fashion which entitled Wilkinson to habeas relief. (Doc. 51, Ex. A.) The Commonwealth now seeks an order in this case dismissing the instant petition on collateral estoppel grounds.

For the reasons set forth below, we will dismiss this petition.

## III.  Discussion

### A. State Prisoner Habeas Relief–The Legal Standard.

A state prisoner seeking to invoke the power of this Court to issue a writ of habeas corpus must satisfy the standards prescribed by Title 28, United States Code, Section 2254, which provides in part as follows:

> **(a)** The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

> **(b)(1)** An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

> > **(A)** the applicant has exhausted the remedies available in the courts of the State;
> > . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

> **(2)** An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254 (a) and (b).

### (1). Substantive Standards Governing Section 2254 Petitions.

As this statutory text implies, state prisoners must meet exacting substantive and procedural benchmarks in order to obtain habeas corpus relief. At the outset, federal

courts may "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States", Section 2254 places a high threshold on the courts. Typically, habeas relief will only be granted to state prisoners in those instances where the conduct of state proceedings resulted in a "fundamental defect which inherently results in a complete miscarriage of justice" or was completely inconsistent with rudimentary demands of fair procedure. See e.g., Reed v. Farley, 512 U.S. 339, 354 (1994). Thus, claimed violations of state law, standing alone, will not entitle a petitioner to Section 2254 relief, absent a showing that those violations are so great as to be of a constitutional dimension. See Priester v. Vaughan, 382 F.3d 394, 401-02 (3d Cir. 2004).

## (2). Procedural Thresholds for Section 2254 Petitions.

Furthermore, state prisoners seeking relief under Section 2254 must also satisfy specific, and precise, procedural standards. Among these procedural prerequisites is a requirement that the petitioner " has exhausted the remedies available in the courts of the State" before seeking relief in federal court. 28 U.S.C. § 2254(b)(2). In instances where a state prisoner has failed to exhaust the legal remedies available to him in the

state courts, federal courts typically will refuse to entertain a petition for habeas corpus. See Whitney v. Horn, 280 F.3d. 240, 250 (3d Cir. 2002). A petitioner who has failed to properly pursue a claim in state court in accordance with state legal procedures can overcome this procedural bar to habeas relief only by showing either: (1) both a valid cause for the procedural default and actual prejudice as a result of some violation of federal law; see Johnson v. Pinchak, 392 F.3d 551, 563 (3d Cir. 2004), or (2) that the failure to review the petitioner's claim will inevitably "result in a fundamental miscarriage of justice". Coleman v. Thompson, 501 U.S. 722, 750 (1991).

This statutory exhaustion requirement is rooted in principles of comity and reflects the fundamental idea that the state should be given the initial opportunity to pass upon and correct alleged violations of the petitioner's constitutional rights. O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999). As the Supreme Court has aptly observed: "a rigorously enforced total exhaustion rule" is necessary in our dual system of government to prevent a federal district court from upsetting a state court decision without first providing the state courts the opportunity to correct a constitutional violation. Rose v. Lundy, 455 U.S. 509, 518 (1982). Requiring exhaustion of claims in state court also promotes the important goal of ensuring that a complete factual record is created to aid the federal courts in their review of a § 2254 petition. Walker v. Vaughn, 53 F.3d 609, 614 (3d Cir. 1995). A petitioner seeking to invoke the writ

of habeas corpus, therefore, bears the burden of showing that all of the claims alleged have been "fairly presented" to the state courts, and the claims brought in federal court must be the "substantial equivalent" of those presented to the state courts. Evans v. Court of Common Pleas, Del. Cty., Pa., 959 F.2d 1227, 1231 (3d Cir. 1992); Santana v. Fenton, 685 F.2d 71, 73-74 (3d Cir. 1982). A petitioner cannot avoid this responsibility merely by suggesting that he is unlikely to succeed in seeking state relief, since it is well-settled that a claim of "likely futility on the merits does not excuse failure to exhaust a claim in state court." Parker v.Kelchner, 429 F.3d 58, 63 (3d Cir. 2005).

B.    **The Doctrine of Collateral Estoppel Applies Here and Compels Dismissal of this Action, Which Raises Claims That Are Legally Indistinguishable From Those Lodged By Wilkinson in His Companion Habeas Petition Which Has Been Denied**.

At the outset, the respondents seek to have this petition dismissed on collateral estoppel grounds, noting that the precise issues raised in this case have been fully and finally litigated in the companion petition filed by Wilkinson against the state parole board. Wilkinson v. Pennsylvania Board of Probation and Parole, Civil No. 3:10-CV-1436. We find that the respondents are justified in asserting the defense of collateral estoppel in this case. Indeed, the doctrine of collateral estoppel clearly applies here and precludes us from re-litigating these issues, yet again, in the guise of a new lawsuit.

Collateral estoppel and issue preclusion are doctrines which play a vital role in litigation. It has long been recognized that "[t]he doctrine[] of . . . collateral estoppel, now . . termed . . . issue preclusion, 'shar[es] the common goals of judicial economy, predictability, and freedom from harassment....' Gregory v. Chehi, 843 F.2d 111, 116 (3d Cir.1988). Generally speaking, the . . . doctrine of issue preclusion, 'precludes the relitigation of an issue that has been put in issue and directly determined adversely to the party against whom the estoppel is asserted.' Melikian v. Corradetti, 791 F.2d 274, 277 (3d Cir.1986)." Electro-Miniatures Corp. v. Wendon Co., Inc. 889 F.2d 41, 44 (3d. Cir.1989)(citations omitted).

The parameters of this doctrine, which precludes relitigation of certain issues, have been aptly defined by the United States Court of Appeals for the Third Circuit in the following terms:

> Issue preclusion, or collateral estoppel, prevents parties from relitigating an issue that has already been actually litigated. "The prerequisites for the application of issue preclusion are satisfied when: '(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment.' " Burlington Northern Railroad Co. v. Hyundai Merch. Marine Co., 63 F.3d 1227, 1231-32 (3d Cir.1995) (quoting In re Graham, 973 F.2d 1089, 1097 (3d Cir.1992)); see also Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, n. 5(1979). In its classic form, collateral estoppel also required "mutuality"-i.e., that the parties on both sides of the current proceeding be bound by the judgment in the prior proceeding.

> Parklane Hosiery, 439 U.S. at 326-27. Under the modern doctrine of non-mutual issue preclusion, however, a litigant may also be estopped from advancing a position that he or she has presented and lost in a prior proceeding against a different adversary. See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 324 (1971); Parklane Hosiery, 439 U.S. at 329. For . . . non-mutual issue preclusion [] to apply, the party to be precluded must have had a "full and fair" opportunity to litigate the issue in the first action. See Parklane Hosiery, 439 U.S. at 328; Blonder-Tongue Labs., 402 U.S. at 331.

Peloro v. United States, 488 F.3d 163, 174-75 (3d.Cir. 2007).

This doctrine, which involves an assessment of the overlap between issues presented in separate lawsuits, raises essentially legal questions which are often amenable to resolution by courts as a matter of law. See, e.g., Peloro v. United States, supra; Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc, supra; Witkowski v. Welch, 173 F.3d 192, 198-205 (3d. Cir. 1999); Burlington Northern Railroad Co. v. Hyundai Merchant Marine Co., Ltd.,, 63 F.3d 1227, 1231-9 (3d. Cir. 1995)(summary judgment, offensive issue preclusion).

In this case, we find as a matter of law that all of the legal requisites for collateral estoppel are clearly present here. At the outset, the issues that Wilkinson seeks to litigate in this petition regarding the calculation of his sentence are virtually identical to those issues raised in the companion case, Wilkinson v. Pennsylvania Board of Probation and Parole, Civil No. 3:10-CV-1436. Moreover, the merits of these

identical issues were fully litigated and resolved in this companion case. Furthermore, our findings in the companion case, <u>Wilkinson v. Pennsylvania Board of Probation and Parole</u>, Civil No. 3:10-CV-1436, were essential to the judgment in favor of the respondents in that case. Thus, it is entirely beyond dispute that three of the four elements to a claim of collateral estoppel are fully satisfied here.

Indeed, Wilkinson appears to concede as much in this pleadings, which only disputes whether our prior ruling constitutes a "final judgment" for collateral estoppel purposes since Wilkinson has appealed this ruling. (Doc. 55.) Wilkinson's argument, while imaginative, is unavailing since in Pennsylvania " 'a judgment is deemed final for purposes of res judicata or collateral estoppel unless or until it is reversed on appeal.' <u>Shaffer v. Smith</u>, 543 Pa. 526, 673 A.2d 872, 874 (1996)." <u>Rutter v. Rivera</u>, 74 F.App'x 182, 187 (3d Cir. 2003).

Since our prior ruling constitutes a final judgment, unless or until it is reversed on appeal, the respondents properly cite that ruling as binding here in a companion case which was filed simultaneously with this case, arose out of the same nucleus of operative facts, and entailed the same legal issues and arguments. Therefore, the doctrine of collateral estoppel calls for dismissal of this petition.

    **C.**    **<u>Wilkinson's Petition Must Be Denied Because He Has Failed To Exhaust His State Remedies</u>**

Entirely aside from the collateral estoppel effect of our prior rulings, we independently find that Wilkinson's current petition fails on its merits. In this case there are both procedural and substantive obstacles to habeas corpus relief for Wilkinson.

At the outset, Wilkinson has failed to meet § 2254's exhaustion requirement. It is now well-settled that exhaustion of available state remedies is an absolute prerequisite to filing a federal habeas petition. 28 U.S.C. § 2254(b)(1). As the United States Court of Appeals for the Third Circuit has held "[i]t is axiomatic that a federal habeas court may not grant a petition for writ of habeas corpus . . . unless the petitioner has first exhausted the remedies available in the state courts." Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997). As the person seeking to invoke habeas relief, Wilkinson bears the burden of establishing that he has exhausted state remedies. Toulson v. Beyer, 987 F.2d 984, 987 (3d Cir. 1993). Wilkinson cannot satisfy this burden and will not be deemed to have exhausted his state remedies as long as he had the right under state law to raise the question presented in his habeas petition. 28 U.S.C. § 2254( c ); Cristin v. Brennan, 281 F.3d 404, 410 (3d Cir. 2002).

In this case Wilkinson is a criminal recidivist and parole violator who was had previously litigated Parole Board rulings to the Commonwealth Court and was,

therefore, familiar with the appellate path he could follow in challenging these decisions. See McMahon v. Pennsylvania Board of Probation and Parole, 504 Pa. 240, 470 A.2d 1337 (1983)(recalculation). Yet, it is undisputed that Wilkinson did not pursue a state appeal of this October 2009 recalculation decision. That failure to pursue available state remedies is now fatal to Wilkinson's petition. Since Wilkinson has failed to exhaust his state remedies with respect to the parole board's action, his petition should be denied. Indeed, such petitions have routinely been denied in the past where, as in this case, it has been shown that the petitioner who is challenging a parole decision has not exhausted his other remedies before proceeding to federal court. See, e.g., Warwick v. Miner, 257 F. App'x  475 (3d Cir. 2007); Williams v. Winder, 232 F. App'x 177 (3d Cir. 2007); Coady v. Vaughn, 251 F.3d 480 (3d. Cir. 2001).

Similarly in the instant case, Wilkinson's habeas petition that names the Attorney General as respondent plainly states that the petitioner has filed some sort of action in the Court of Common Pleas of Cumberland County challenging his guilty plea conviction in state court. (Doc. 3, ¶11.) As to the status of this pending state case, Wilkinson alleges that he is still awaiting a decision, and notes that he has taken no steps to exhaust his state appellate rights. (Id.) Thus, to the extent that Wilkinson's current complaints relate to the interpretation and application of his state plea agreement, he clearly is litigating, but has not exhausted, these claims in state court.

Therefore, by his own admission Wilkinson's petition is the absolute paradigm of an unexhausted petition which in the normal course should be dismissed.

This court cannot review the merits of procedurally defaulted or unexhausted claims unless Wilkinson shows either cause for the procedural default and actual prejudice, or that a fundamental miscarriage of justice will result if the court does not review the claims. See McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999); Caswell v. Ryan, 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate "cause" for a procedural default, Wilkinson must point to some objective external factor which impeded his efforts to comply with the state's procedural rule. See Murray v. Carrier, 477 U.S. 478, 488 (1986). "Prejudice" will be satisfied only if Wilkinson can demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law. See Lockhart v. Fretwell, 506 U.S. 364, 366 (1993). Here, Wilkinson's petition fails to excuse these defaults because he has offered no good cause or excuse for his failure to follow the proper procedures to challenge the Board's revocation decisions and recalculation orders. Moreover, Wilkinson has not demonstrated the type of fundamental unfairness in the parole board's conduct which would permit a finding of prejudice. Quite the contrary, the Board's actions with respect to this parole violator seem fitting and just in this case.

Nor can Wilkinson avoid this procedural default by claiming that the failure to review the claim will result in a fundamental miscarriage of justice. Edwards v. Carpenter, 529 U.S. 446, 451 (2000). The miscarriage of justice exception applies only in extraordinary cases where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 496. Here Wilkinson's procedurally flawed petition does not claim that he is actually innocent. Rather, Wilkinson simply disputes the manner in which the Board calculated his parole violation maximum sentence after he was recommitted as a convicted parole violator. Such a claim simply does not amount to the type of profound, compelling miscarriage of justice which would excuse a petitioner's procedural defaults. Therefore, this petition is procedurally barred due to Wilkinson's failure to exhaust his state remedies.

**D.**     **Wilkinson's Petition Fails On Its Merits**

    **1.**     **Wilkinson is Not Entitled to Use a Writ of Habeas Corpus to Compel the Parole Board to Impose its Parole Violator Sentence Concurrently.**

Finally, to the extent that the gravamen of Wilkinson's petition is a demand that state officials recalculate his parole violation sentence in a more favorable fashion, this

petition fails on its merits since Wilkinson has not identified state conduct in this case which violates the Constitution or laws or treaties of the United States, or led to a fundamental defect which resulted in a complete miscarriage of justice. Fairly construed, Wilkinson's petition raises two issues, neither of which merits habeas relief.

At the outset, in his petition Wilkinson simply challenges the fashion in which the Parole Board recalculated his term of incarceration following his involvement in new crimes. Specifically, Wilkinson protests the Board's decision not to permit the parole violation sentence to run concurrently with the sentences imposed for those new crimes which formed the basis of this parole violation.

State inmates like Wilkinson frequently invite federal courts to revisit discretionary parole determinations by challenging those parole decisions on constitutional grounds. Yet these invitations are rarely embraced by the courts. Thus, federal courts have routinely rejected suggestions by state prisoners that discretionary parole denials offend constitutional due process, and have denied habeas relief to such petitioners. See, e.g., Williams v. Pa. Bd. of Probation and Parole, No. 07-3158, 2008 WL 5120773 (E.D. Pa. Oct. 31, 2008); Walls v. Attorney General, No. 06-1598, 2007 WL 4190790 (W.D. Pa. Nov. 26, 2007); Zuniga v. Pa. Bd. of Probation and Parole, No. 05-5517, 2007 WL 1002179 (E.D. Pa. March 29, 2007); Anderson v. Pa. Bd. of Probation and Parole, No. 05-00163, 2006 WL 1149233 (M.D. Pa. April 26, 2006);

Bonsall v. Gillis, 372 F.Supp. 2d 805 (M.D. Pa. 2005); Bachman v. Jeffries, 488 F.Supp. 107 (M.D. Pa. 1980).

These cases are grounded upon several basic tenets of constitutional law. At the outset, these cases acknowledge that it is well-settled that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1, 7 (1979); see also Rauso v. Vaughn, 79 F. Supp. 2d 550, 551 (E.D. Pa.2000)(the federal constitution does not create an entitlement to parole). These cases all further recognize that the Pennsylvania parole statute does not create a liberty interest in the right to be paroled. Burkett v. Love, 89 F.3d 135, 139 (3d Cir.1996); Rodgers v. Parole Agent SCI-Frackville, 916 F. Supp 474, 476-77 (E.D. Pa. 1996); McCrery v. Mark, 823 F.Supp. 288, 294 (E.D. Pa. 1993). Therefore, Wilkinson may not premise his habeas petition on a claim of some constitutional entitlement to parole.

Recognizing this reality, in this case Wilkinson's petition attacks another aspect of the parole process: the fact that, under certain circumstances, state law prohibits parole violating sentences from running concurrently with the sentences imposed for new crimes committed by an offender while on parole. See 61 Pa. C.S. § 6138(a)(5). Thus, at bottom, Wilkinson's petition launches a constitutional challenge to the entire

structure of Pennsylvania's parole statute. The difficulty with this claim is that it is well-established that this aspect of Pennsylvania's parole statute is constitutional. See United State ex rel. Lawson v. Cavell, 425 F.2d 1350, 1352 (3d Cir. 1970)(rejecting Eighth Amendment and due process claims). Indeed, for more than 50 years federal courts have expressly considered the provision of state law challenged by Wilkinson, which prohibits parole violation sentences from running concurrently with the sentences imposed for new crimes committed by an offender while on parole, and have held that this Parole Board policy does not violate any federal constitutional right of states prisoners. See, e.g., Henderson v. Commonwealth, 287 F.Supp. 372 (W.D.Pa. 1968); Kunkle v. Claudy, 112 F.Supp. 598 (M.D.Pa. 1953). As one court recently observed when rejecting a similar claim:

> Petitioner's claim that the Board refused to allow him to serve his backtime sentence concurrently with his federal sentence alleges violations of state law and, therefore, is not cognizable on federal habeas review. See United States ex rel. Long v. Rundle, 327 F.2d 495, cert. denied, 377 U.S. 957 (1964) (holding that petitioner's claim that he should have been permitted to serve the remainder of the sentence from which he was paroled before serving the sentence imposed for the crime committed while on parole raised no constitutional question). In this regard, there is no inherent constitutional right to concurrent sentences, nor is there a constitutional right regarding which sentence should be served first. See United States v. Dovalina, 711 F.2d 737, 739 & n. 1 (5th Cir.1983) (holding that the Constitution does not create a right to have state and federal sentences run concurrently). Cf. Piercy v. Black, 801 F.2d 1075, 1078-79 (8th Cir.1986) (rejecting full faith and credit clause argument because "one state cannot control the manner in which another

state administers its criminal justice system.").

Gibson v. Murray, No. 05-874, 2006 WL 2668528, 3 (W.D.Pa. Sept.14, 2006).

These observations remain as pertinent and compelling today as they were when they were initially made, and continue to rebut any habeas challenge to the parole board's compliance with state law, which refuses to reward parole violators with concurrent time credit when they commit new crimes while on parole.

2.  **Wilkinson, a Rapist Who Committed a Gun-Point Sexual Assault While On State Parole, May Not Use a Writ of Habeas Corpus to Set Aside the Parole Board's Determination That He is a Sex Offender**

Nor can Wilkinson, a state prisoner, challenge the current Parole Board actions classifying him as sex offender on constitutional ex post facto clause grounds. With respect to this claim, the guiding legal standards can be simply stated:

The Ex Post Facto Clause states that "[n]o State shall ... pass any ... ex post facto Law." U.S. Const. art. I, § 10, cl.1. The Clause applies to a statute or policy change which "alters the definition of criminal conduct or increases the penalty by which a crime is punishable." The ex post facto

inquiry has two prongs: (1) whether there was a change in the law or policy which has been given retrospective effect, and (2) whether the offender was disadvantaged by the change. To violate the Ex Post Facto Clause, a retroactive change in the law or policy must create a "sufficient risk of increasing the measure of punishment attached to the covered crimes"; a "speculative and attenuated possibility of ... increasing the measure of punishment" is not enough.

Richardson v. Pa. Bd. of Probation and Parole 423 F.3d 282, 287-88 (3d. Cir. 2005)(citations omitted). Since proof of an ex post facto violation requires both proof of a change in the law, and evidence that "the offender was disadvantaged by the change," Richardson v. Pa. Bd. of Probation and Parole, 423 F.3d at 287-88, to sustain such a claim Wilkinson must show that some change in the law, retroactively applied to him, created an "individualized disadvantage" for the petitioner in securing parole. Richardson v. Pa. Bd. of Probation and Parole, supra; Yeckel v. Commonwealth of Pennsylvania, No. 05-839, 2006 WL 891461, *4 (W.D. Pa., March 29, 2006).

To meet this burden Wilkinson must make an exacting showing. As the United States Court of Appeals for the Third Circuit has held when rejecting a similar claim by a state inmate who, like Wilkinson, had committed prior violent sex offenses, a petitioner advancing an ex post facto claim must present some evidence that the new law disadvantaged him. As the Court explained "[t]he mere intuition that stricter standards are more likely to lead to an adverse result is insufficient. Rather, [a

petitioner] must provide such evidence as indications that he would have been a good candidate for parole under the old law, . . ., and the extent to which the reasons given for denying him parole would not have been considered before [the change in the law.]." Taylor v. Pa. Board of Probation and Parole, 181 F.App'x, 253, 254-255 (3d Cir. 2006); See Shaffer v. Meyers, 163 Fed. Appx. 111 (3d Cir. 2006). See also Sheffield v. Pa. Department of Corrections, No. 07-2046, 2009 U.S. Dist. LEXIS 5110, at *6 (M.D. Pa. January 26, 2009). Applying these standards, courts have consistently rejected efforts by sexual offenders to use the Constitution's ex post facto clause as a means of challenging parole actions based upon their sex offender status. Pleaze v. Klem, 335 F.App'x 168, 171-72 (3d Cir. 2009); Taylor v. Pa. Board of Probation and Parole, 181 F.App'x, 253, 254-255 (3d Cir. 2006); Barrett v. Bretton, No. 08-117, 2010 WL 330250 (W.D. Pa. Jan. 11, 2010); Sheffield v. Pa. Dep't of Corrections, No. 07-2046, 2009 WL 210490 (M.D. Pa. Jan. 26, 2009); Trivit v. Klem, No. 07-883, 2008 WL 4616800 (M.D. Pa. Oct. 16, 2008); Smythe v. Diguglielmo, No. 05-5869, 2007 WL 2972586 (E.D. Pa. Oct. 10, 2007).

These principles are fully applicable here, and compel denial of this petition for writ of habeas corpus on its merits. At the outset, Wilkinson's petition does not allege facts which would permit the Court to conclude that the undeniably accurate description of this serial rapist as a sex offender results in an "individualized

disadvantage " for the petitioner in securing parole. In short, Wilkinson has not shown that this sex offender classification amounts to an unconstitutional application of the law to his case. Rather, that classification simply appears to represent the Board's longstanding acknowledgment that offenders like Wilkinson–a rapist who committed a gun-point sexual assault while on parole for a prior rape–present a constellation of grave risk factors, risk factors that transcend any changes in the law. This sex offender classification decision, therefore, was a careful, informed balancing of the interests of both the inmate and society. Since nothing in this Parole Board classification decision offends constitutional considerations, this petition for writ of habeas corpus should be denied.

### E.    Wilkinson's Motion to Vacate Will Also Be Denied

Having concluded that Wilkinson's petition should be denied, both on collateral estoppel grounds, and on the merits, we will briefly consider the motion to vacate filed by Wilkinson. (Doc. 56.) While captioned simply as a motion to vacate, this pleading actually sought wide-ranging relief from the court in a cursory fashion, demanding that we: (1) reinstate a trial schedule; (2) initiate full discovery; (3) grant Wilkinson  bail;

(4) authorize an interlocutory appeal; and (5) recuse ourselves from further involvement in this case. (Id.)

We will decline this invitation. At the outset we note that our ruling on the merits dismissing this petition render many of these requests moot, and now provides Wilkinson with full appellate rights to further pursue these claims. In any event, we conclude that Wilkinson is not entitled to the relief which he seeks in this motion.

For example, Wilkinson is not entitled to further discovery in this case. Habeas petitioners have no absolute right to make discovery demands upon respondents. Thus, " '[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." Bracy v. Gramley, 520 U.S. 899, 904 (1997).' " Vasquez v. Glover, No. 09-2593, 2010 WL 2569715, *1 (D.N.J. June 24, 2010). Rather, decisions on discovery requests rest in the sound discretion of the court. See Levi v. Holt, 192 F.App'x 158, 162 (3d Cir. 2006). That discretion is guided by certain basic principles, however. Thus "Rule 6(a) of the Rules Governing Section 2254 Cases, . . . , provides that discovery will not be granted except for good cause." Id. Therefore, it is incumbent upon the petitioner to make a showing of good cause to justify discovery in these proceedings. As the United States Court of Appeals for the Third Circuit has noted:

Just as bald assertions and conclusory allegations do not afford a sufficient ground for an evidentiary hearing, see Wacht v. Cardwell, 604 F.2d 1245, 1246 n. 2 (9th Cir.1979), neither do they provide a basis for imposing upon the state the burden of responding in discovery to every habeas petitioner who chooses to seek such discovery. Under Rule 6(a) of the Rules Governing Habeas Corpus Cases Under § 2254 the district court has discretion to decide the extent to which discovery is appropriate. The Advisory Committee Note to Rule 6 makes clear that prior court approval is required to prevent abuse.

Mayberry v. Petsock, 821 F.2d 179, 185 (3d. Cir. 1987).

Rather, "[u]nder the 'good cause' standard of the § 2254 Rules, a district court should grant leave to conduct discovery in habeas proceedings only ' "where specific allegations before the court show reason to believe that the petitioner may, if the facts are more fully developed, be able to demonstrate that he is ... entitled to relief." ' Bracy, 520 U.S. at 908-09 (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)). Vasquez v. Glover, supra, 2010 WL 2569715, * 1. Accordingly, where there appear to be threshold legal bars to a state prisoner-petitioner obtaining habeas relief, the proper course is to deny motions seeking factual discovery. Brown v. DiGuglielmo, No. 07-3465, 2007 WL 4242266, *1 (E.D.Pa. Nov. 29, 2007), citing Williams v. Bagley, 380 F.3d 932, 974-76 (6th Cir.2004) (noting that discovery requests relating to procedurally defaulted claims were properly denied because discovery could not lead to a colorable basis for relief on those claims); Peterkin v. Horn, 30 F.Supp.2d

513, 518-20 (E.D.Pa.1998) (same).

Applying these benchmarks in this case, in the exercise of our discretion we find that further discovery of the type proposed by Wilkinson is not appropriate, or necessary, here.

Wilkinson's request for bail is also inappropriate. As an inmate serving a criminal sentence, Wilkinson must make a demanding showing to justify release from custody pending litigation of his habeas corpus petition. With respect to such bail requests by inmate habeas petitioners:

> [C]ourts that have been faced with requests for bail prior to ruling on a habeas petition have developed standards requiring that a habeas petitioner (1) make out a clear case for habeas relief on the law and facts, or (2) establish that exceptional circumstances exist warranting special treatment, or both. See, e.g., Eaton v. Holbrook, 671 F.2d 670, 670 (1st Cir.1982); Iuteri v. Nardoza, 662 F.2d 159, 161 (2d Cir.1981); Calley v. Callaway, 496 F.2d 701, 702 (5th Cir.1974).

Lucas v. Hadden, 790 F.2d 365, 367 (3d Cir. 1986).

In this case, we find that Wilkinson plainly has not met this demanding standard of proof justifying release on bail. At the outset, Wilkinson does not allege, or prove, any "exceptional circumstances" justifying release from custody in his motion. Thus, he fails to make any claim that would bring his petition within that narrow realm of

extraordinary cases where release pending resolution of the habeas petition is appropriate.

Moreover, Wilkinson has not made out a clear case for habeas relief on the law and facts, another prerequisite for release pending resolution of a habeas petition. Quite the contrary, as we have previously noted, we have ruled against Wilkinson on the merits of this petition. Since he has shown neither "exceptional circumstances" nor any likelihood of success on the merits, Wilkinson's request for bail must be denied.

Finally, we will decline Wilkinson's request that we recuse ourselves. The legal standards which govern such recusal requests were aptly defined in <u>Conklin v. Warrington Township</u>, 476 F.Supp.2d 458 (M.D. Pa. 2007). In terms that are equally applicable here, the court explained that with respect to recusal requests:

> The disqualification standard is set forth in 28 U.S.C. § 455, which provides in pertinent part as follows:
>
> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
> (1) Where he has a personal bias or prejudice concerning a party....
>
> <u>Id</u>. Pursuant to the above quoted language, the court must consider whether its rulings and statements objectively produce the appearance of bias against Conklin. As explained by the Supreme Court, these provisions "require ... 'bias

30

and prejudice' ... to be evaluated on an objective basis, so that what matters is not the reality of bias or prejudice but its appearance." <u>Liteky v. United States</u>, 510 U.S. 540, 548, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). This objective standard requires recusal when a "reasonable man knowing all the circumstances would harbor doubts concerning the judge's impartiality." <u>Edelstein v. Wilentz</u>, 812 F.2d 128, 131 (3d Cir.1987) (citing <u>United States v. Dalfonso</u>, 707 F.2d 757, 760 (3d Cir.1983)); <u>see also In re Antar</u>, 71 F.3d 97, 101 (3d Cir.1995). If the record presents a close question, the court must resolve the issue in favor of disqualification. <u>Nichols v. Alley</u>, 71 F.3d 347, 352 (10th Cir.1995).

<u>Id</u>. at 462-3.

It is clear, however, that a party's disappointment with the court's rulings, standing alone, cannot form the basis for recusal:

The Third Circuit has repeatedly observed that "a party's displeasure with legal rulings does not form an adequate basis for recusal." <u>Securacomm Consulting, Inc. v. Securacom, Inc</u>., 224 F.3d 273, 278 (3d Cir.2000) (<u>citing In re TMI Litig</u>., 193 F.3d 613, 728 (3d Cir.1999) and <u>Jones v. Pittsburgh Nat'l Corp</u>., 899 F.2d 1350, 1356 (3d Cir.1990)). Subsections 455(a) and (b)(1) require the source of bias to be extrajudicial, that is stemming from a source outside of the proceeding, or of such an intensity as to make a fair trial impossible. <u>Blanche Rd. Corp. v. Bensalem Twp</u>., 57 F.3d 253 (3d Cir.1995), <u>cert. denied</u>, 516 U.S. 915, 116 S.Ct. 303, 133 L.Ed.2d 208 (1995). As stated by the Supreme Court:

[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they will do so if they reveal such a high degree

of favoritism or antagonism as to make fair judgment impossible.

> Liteky, 510 U.S. at 555, 114 S.Ct. 1147 (emphasis in original).

Id. at 463.

Furthermore, in assessing recusal requests, courts must remain mindful that a recusal motion may be a calculated tactical tool designed to avoid the result which the law dictates in a case. Thus, in every instance:

> [T]he court must consider whether attacks on a judge's impartiality are simply subterfuge to circumvent anticipated adverse rulings. In re Antar, 71 F.3d at 101; Alexander v. Primerica Holdings, Inc., 10 F.3d 155, 162 (3d Cir.1993). Indeed, a judge "has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require." Bryce v. Episcopal Church in the Diocese of Colorado, 289 F.3d 648, 659 (10th Cir.2002) (quoting Nichols, 71 F.3d at 351); Cooney v. Booth, 262 F.Supp.2d 494, 508 (E.D.Pa.2003); see also United States v. Snyder, 235 F.3d 42, 46 n. 1 (1st Cir.2000); Curley v. St. John's University, 7 F.Supp.2d 359, 362 (S.D.N.Y.1998).

Id. at 463.

In order to ensure that recusal requests do not become last-minute devices used to attempt to avoid outcomes mandated by law, a recusal motion is "also subject to the requirement that it be 'timely.' See 28 U.S.C. § 144. 'It is well-settled that a party must raise its claim of a district court's disqualification at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim.' Apple v.

Jewish Hosp. and Medical Ctr., 829 F.2d 326, 333 (2nd Cir.1987). The Third Circuit has described this requirement as one of 'reasonable diligence.' See Furst, 886 F.2d at 581 n. 30." Cooney v. Booth, 262 F.Supp.2d 494, 503-4 (E.D.Pa. 2003), aff'd., 108 F.App'x 739 (3d. Cir. 2004).

Furthermore, where a recusal request, like this request, is premised upon some prior government service by a judge, such as service as United States Attorney, it is clear that the fact of that prior service, standing alone, does not provide grounds for recusal. Indeed, such a global claim of recusal has long been expressly rejected by the United States Court of Appeals for the Third Circuit, which has held that:

> Since a judge's prior position as a United States Attorney does not require his or her recusal unless the case at issue arose before the judge left that position, see Barry v. United States, 528 F.2d 1094 (7th Cir.), cert. denied, 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976); In re Grand Jury Investigation, 486 F.2d 1013, 1015-16 & n. 3 (3d Cir.1973), cert. denied, 417 U.S. 919, 94 S.Ct. 2625, 41 L.Ed.2d 224 (1974), [ a judge's] prior [government] position . . . could not reasonably be deemed to be a basis to question [the judge's] ability to rule impartially in this case.

Edelstein v. Wilentz 812 F.2d 128, 131 (3d Cir. 1987).

Judged against these standards, Wilkinson's recusal request is both untimely, and legally insufficient. Since a judge "has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require." Bryce

v. Episcopal Church in the Diocese of Colorado, 289 F.3d 648, 659 (10th Cir.2002), we will therefore deny this request.

**IV**.   **Conclusion**

Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus filed pursuant to 28, United States Code, § 2254, the respondents' motion to dismiss the petition (Doc. 51) and the petitioner's motion to vacate (Doc. 56) IT IS ORDERED as follows:

1. The respondents' motion to dismiss (Doc. 51) is GRANTED, the Petition is DENIED, and we find that a certificate of appealability should not issue.

2. The petitioner's Motion to vacate (Doc. 56) is DENIED.

3. The clerk is directed to close this file.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge

Dated: November 18 , 2010